## STATE v. JAMES A. RYAN.[1]

May 25, 1917.

Nos. 20,351—(9).

**Larceny — evidence.**

1. Evidence *held* sufficient to sustain a finding that a larceny was committed.

[1]Reported in 162 N. W. 893.

**Same — circumstantial evidence.**
> 2. Evidence, which is circumstantial, *held* sufficient to sustain a find-
> ing that the defendant committed it.

Defendant was indicted by the grand jury for the crime of grand larceny in the second degree, tried in the district court for Anoka county before Giddings, J., and a jury which returned a verdict of guilty as charged in the indictment. From the judgment of conviction, defendant appealed. Affirmed.

*W. J. Donahower,* for appellant.

*Lyndon A. Smith,* Attorney General, *James E. Markham,* Assistant Attorney General, and *W. A. Blanchard,* County Attorney, for respondent.

DIBELL, C.

The defendant with two others was indicted by the grand jury of Anoka county for grand larceny in the second degree. He was convicted on his separate trial and appeals. The sufficiency of the evidence is the only question. It is claimed to be insufficient both as proof that a crime was committed and of Ryan's connection with it.

1. On October 22, 1915, Anoka was celebrating the completion of the electric railroad to the Twin Cities. There was a large attendance. Public exercises were held at the stadium and later refreshments were served by the people of the city at stands or tables in the streets. Thomas Hering, a grocer, assisted in serving. When he left his store he put in his left hip pocket a large pocket-book containing $30 in currency. The pocket-book fitted closely. He could not take it from his pocket, except by the use of both hands, without the lining following it, that is, without turning the pocket inside out. In some way the pocket-book got out of his pocket. He felt it there shortly before it was missed. The lining of the pocket was turned inside out. No one saw it taken and it was not found. It could hardly have gotten out accidentally. Hering did not take it out. The evidence sustains a finding that it was stolen.

2. Ryan is connected with the theft only by circumstantial evidence. He and his codefendants were among the crowd about the tables. Their

actions were suspicious. They, or more particularly Ryan and one of them, pushed into the crowd, moving back and forth, jostling and crowding the people, then withdrawing, and again pushing in and repeating. They were within 2 or 3 feet of Hering a few minutes before he missed his pocket-book, "right snug up" at one time. They then withdrew and went into a temperance saloon nearby. They were followed by Hering and another. They were being watched. Apparently they knew it. They separated, Ryan disappearing. It is apparent that the three endeavored to escape, not by running but by stealth, and that they were acting in concert. Ryan was wearing a dark soft hat. During his effort to escape, and when in the outskirts of the city, it was changed to a check cap with a stiff visor. He also put on blue or black glasses. His disguise was so perfect that those attempting to identify him from his appearance when in the crowd were deceived. He was arrested and taken to the jail in an automobile. His soft hat was found in the automobile the next day concealed under some robes. When arrested he denied that he knew his codefendants. None of the stolen property was found. It was not in the possession of any of the defendants. Ryan was a stranger. According to his story he came in from St. Cloud in a box car, and had been working in the harvest fields of North Dakota.

The evidence that Ryan was connected with the larceny is not strong. If believed, however, it is convincing that he was in the crowd close up to Hering, just before he missed his money, and shortly before it was taken by some one. He was not in the crowd for a proper purpose. Immediately after the theft he moved out of the crowd, separated from his companions, and sought to escape, using the disguise noted, and when arrested denied acquaintance with them. His conduct after the theft might be reasonably construed by the jury as indicative of a connection with it. The case was put to the jury in a clear and thoroughly impartial charge and so far as the record discloses the trial was entirely fair. The trial judge has given the verdict his approval. After an attentive consideration of the evidence, the inconclusive character of which is apparent and which we appreciate, we are of the opinion that the jury, having in mind the degree of proof required in criminal

cases, could reasonably have found as it did. The verdict, having the approval of the trial court, should not be disturbed.

Judgment affirmed.